STICKLES, Appellant, vs. REICHARDT and wife, Respondents.

*January 15—February 10, 1931.*

580

For the appellant there was a brief by *Fawsett & Shea* of Milwaukee, and oral argument by *Edmund B. Shea.*

For the respondents there was a brief by *August C. Moeller,* attorney, and *Emmet Horan, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Horan.*

ROSENBERRY, C. J.   On behalf of the plaintiff it is contended:

"I. The defendants' promise to allow the plaintiff to see and visit the child was supported by valid consideration.

"II. Equity should compel specific performance of the defendants' promise because the legal remedy of damages would be an inappropriate and inadequate remedy for the breach.

"III. The order of adoption did not release the defendants' promise regarding visitation of the child.

"IV. The defendants' promise is sufficiently certain to support a decree of specific performance.

"V. The amount of judicial supervision required for enforcement of a decree of specific performance in this case would not be enough to justify a denial of relief on that ground."

On behalf of the defendants it is contended:

"(1) The order of adoption, by terminating the legal status between the plaintiff and his son, necessarily released the defendants from their agreement regarding visitation of the child, because to recognize or enforce such agreement would detract from the statutory force and effect of the adoption. This theory in effect was adopted by the trial court in rendering its decision on the demurrer.

"(2) The contract, even if otherwise valid, is not sufficiently certain in its terms to warrant specific performance.

"(3) Specific performance should be denied because supervision of enforcement of an affirmative decree would impose a troublesome burden on the court."

The trial court was of the view that adoption proceedings having been had in the county court of Milwaukee county, under the doctrine of *Carlson v. MacCormick,* 178 Wis. 408, 190 N. W. 108, and *Cawker v. Dreutzer,* 197 Wis. 98, 221 N. W. 401, the county court of Milwaukee county had exclusive jurisdiction of the action. It is considered that in so holding the trial court was in error. The cause of action, if any exists, is one for the specific performance of a contract. The mere fact that it relates to the custody of a child which was secured to the adoptive parents by an order of the county court of Milwaukee county, is not controlling. The question is the same as if a natural parent had entered into a contract with a third person of like tenor, so that we are brought to a consideration of the question raised by the demurrer upon the merits.

While there is some conflict in the cases, the great weight of authority is to the effect that, in the absence of a statute, contracts of a parent by which a parent attempts to transfer permanently the custody of his child to another are invalid as contrary to public policy. 46 Corp. Jur. p. 1231, cases cited, note 32 *et seq.* See, also, 1 Schouler, Marriage, etc. § 748, cases cited, note 56, p. 804. While the contract in the case at bar would not result in a permanent transfer of the custody of the child, it would if given effect impair the adoptive parents' right to the custody of their child and might in its effect greatly impair the new parent-child relationship with very undesirable consequences to the child. Sec. 322.07, Stats., declares and fixes the right of adoptive parents, and among other things provides:

"The natural parents of such child shall be deprived, by such order of adoption, of such legal rights, if any, of what-

soever nature which they may have respecting such child and its property."

The order of adoption changes the status of the child, destroys the parental relationship theretofore existing between it and its natural parents, and creates a new relationship between the child and its adoptive parents, which has all the incidents of a status. The adoptive parents can no more barter away their rights in their adopted child or modify its status by contract than could a natural parent under the same or similar circumstances.

A great deal of the confusion which exists in the cases arises from the fact that there has been a failure to distinguish between the validity of a contract as such and the consequences to the child which have arisen by reason of the making of the contract. In determining matters having to do with the custody of children, the primary question is, What is for the best interest of the child? Where a parent has voluntarily contracted away his rights and the child as a. result has formed new attachments, it may very well be that a situation has been created which a court will hesitate to disturb, not on the principal ground that the contract was valid or invalid, but because, everything considered, the welfare of the child demands the continuance of the new relationship. In many cases language is used which indicates that the court's conclusion is based upon the contractual rights of the parties as such, but in reality that is only one factor in a number of factors which leads the court to the conclusion that the best interests of the child requires its custody to be left where the contract placed it. See note, *Wilkinson v. Lee,* 42 L. R. A. N. s. 1013. While the facts in this case make a strong emotional appeal, they do not change the legal situation nor render the statute inoperative.

*By the Court.*—The order appealed from is affirmed.