Jimmy POE and Carolyn POE
*v.* Bernice CASE

77-381                    565 S.W. 2d 612

Opinion delivered May 22, 1978
(Division I)

*Paul J. Nicholson,* for appellants.

*John I. Purtle,* of *Purtle, Osterloh & Weber,* for appellee.

JOHN A. FOGLEMAN, Justice. On June 12, 1975, an interlocutory order of adoption of Christina Jean Handy, a minor, by Jimmy and Carolyn Poe (the child's natural mother), was entered by the Probate Court of Pulaski County. After a trial on the issue whether the child has been abandoned by Reginald Wayne Handy, her natural father, from whom Carolyn Poe had been divorced, the parties agreed to the entry of a consent decree affirming the adoption order

and granting to Mrs. Bernice Case, mother of Reginald Wayne Handy, rights of reasonable visitation, as she requested by pleading filed in the case. On October 20, 1977, Mrs. Case filed a petition asking that the Poes be held in contempt of court, alleging that they had denied Mrs. Case the enjoyment of her right of visitation and asking that the court set definite visitation rights. The Poes denied these allegations and alleged that the visitation provision of the decree of adoption was void because the probate court lacked authority and jurisdiction to make an award of visitation rights in an adoption proceeding. They asked that the court vacate that portion of the decree.

The probate court denied the motion to vacate and proceeded to hear testimony on the issue of contempt. At the conclusion of this hearing, the court denied the Poes' renewal of their motion to vacate the visitation provisions of the adoption decree. This motion was based on their assertion of the court's lack of authority or subject matter jurisdiction to award visitation rights to a natural grandparent.[1] We agree with the appellants and reverse the judgment of the probate court.

The probate court is a court of special and limited jurisdiction, having only such jurisdiction and powers are are conferred by the constitution or by statute, or necessarily incident to the exercise of the jurisdiction and powers specifically granted. *Hilburn* v. *First State Bank,* 259 Ark. 569, 535 S.W. 2d 810. There is no mention of adoption, child custody or visitation rights in the Arkansas Constitution. Jurisdiction of adoption proceedings has been vested in the probate court by statute. Adoption proceedings were unknown to the common law, so they are governed entirely by statute. *Morris* v. *Pendergrass's Admr.,* 59 Ark. 483, 28 S.W. 30. See also, *Spencer* v. *Franks,* 173 Md. 73, 195 A. 306, 114 ALR 263 (1937). These proceedings were governed by Ark. Stat. Ann. § 56-101 et seq (Repl. 1971)[2] at the time the decree of adoption

---

[1]The natural father was neither a party nor a participant, either here or in the trial court, to any of the proceedings subsequent to the entry of the final decree of adoption.

[2]Those sections have been repealed and replaced by Ark. Stat. Ann. § 56-201 et seq (Supp. 1977) effective July 5, 1977. This new statute does not affect this proceeding or indicate any public policy changes in respect to adoptions.

was entered in this case. The court's authority and jurisdiction are governed strictly by this statute. See *Norris* v. *Dunn*, 184 Ark. 511, 43 S.W. 2d 77. Nothing is said in it about visitation rights of grandparents. As a matter of fact, the natural parents of an adopted child are divested of all legal rights and obligations due from them to the child and from the child to them. Ark. Stat. Ann. § 56-109 (a). The relative rights of the adopting parents and the adopted person are said to be as if the child had been born to the parents in lawful wedlock. Ark. Stat. Ann. § 56-109 (b) and (c). See also, Ark. Stat. Ann. § 56-124. Ark. Stat. Ann. §§ 56-109 and 56-124 constitute a clear declaration of public policy in this respect. The adopted child actually ceases to be a member of the family of the natural parents, occupies the status of a natural child in respect to the adoptive parents, becomes a member of their family and they exercise custody and control over it. *Dean* v. *Smith*, 195 Ark. 614, 113 S.W. 2d 485; *Shaver* v. *Nash*, 181 Ark. 1112, 29 S.W. 2d 298, 73 ALR 961; *Sanders* v. *Taylor*, 193 Ark. 1095, 104 S.W. 2d 797; Annot. 114 ALR 271.

When an adoption statute has the effect ours has, it is generally held that the court granting the adoption has no authority to include a grant of visitation rights to members of a natural parent's family. See *Browning* v. *Tarwater*, 215 Kan. 501, 524 P. 2d 1135 (1974); *Spencer* v. *Franks*, supra; *Matter of Fox*, 567 P. 2d 985 (Okla., 1977); 2 Am. Jur. 2d 929, Adoption, § 85.

A decree attempting to grant visitation rights to a natural grandparent as an incident to an adoption or to enforce a grandparent's visitation rights granted before the adoption, without specific statutory authority, is surplusage, void and separable from the remainder of the decree. *Spencer* v. *Franks*, supra. We have held that an attempt by a probate court to determine who should have custody of a child in a contest between its mother and grandmother which arose in a guardianship proceeding was void because it was beyond the power and authority of the court. *Edwards* v. *Martin*, 231 Ark. 528, 331 S.W. 2d 97. The action here was void for the same reason. Furthermore, the jurisdiction of the court has, for all practical purposes, been exhausted when the final decree of adoption is entered and the probate court has no jurisdiction to change or modify its original decree or make orders per-

taining to custody questions, as appellee sought to have it do. *Spencer* v. *Franks,* supra.

Appellee relies upon the fact that the Poes agreed to these visitation rights as a basis for the natural father's consent to the adoption. An agreement to provide for such visitation rights in the absence of statute is against public policy and void and unenforceable. *Whetmore* v. *Pratello,* 197 Or. 396, 252 P. 2d 1083 (1953); *Stickles* v. *Reichardt,* 203 Wis. 579, 234 N.W. 728 (1931).

Since the visitation portion of the adoption decree was in excess of the court's authority or subject matter jurisdiction, it was void and subject to collateral attack. See *Edwards* v. *Martin,* supra; *Spencer* v. *Franks,* supra.

It is urged that the policy of this state with reference to visitation rights of grandparents expressed in Ark. Stat. Ann. §§ 57-135 and 34-1211.1 (Supp. 1977) is applicable and sufficient to sustain the probate court's action. Those statutes address themselves to courts having jurisdiction in custody proceedings and are clearly inapplicable by their own terms to adoption proceedings. Since this is the case, they certainly do not indicate a reversal of the strong public policy, expressed in the adoption statutes, to strengthen the relationship between the adopted child and its adoptive family and to terminate the previous family relationship. See *Browning* v. *Tarwater,* supra; *Matter of Fox,* supra. Besides, the new adoption statute is the most recent declaration of public policy with reference to adoptions. In Ark. Stat. Ann. § 56-215 (Supp. 1977), the General Assembly stated that a final adoption decree should have the effect of terminating all legal relationships between the adopted individual and his relatives so that the adopted individual thereafter is a stranger to his former relatives for all purposes.

The judgment of the probate court is reversed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.