IN RE INTEREST OF SEAN DAVID DITTER AND TISHA LYNNE DITTER, CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLANT, V. GODFREY DITTER AND LORENA DITTER, APPELLEES.

326 N.W.2d 675

Filed November 24, 1982. No. 44457.

Paul Schumacher, Platte County Attorney, for appellant.

George H. Moyer, Jr., of Moyer, Moyer & Egley, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

The instant appeal presents to the court the very narrow question of whether, as a matter of law, the grandparents of children whose parents' rights to the children have been terminated by court order are entitled to rights of visitation following the termination, or whether, as a matter of law, the best interests of such children require us to hold that such rights of visitation do not exist. Initially, Godfrey Ditter and his wife, Lorena Ditter (Ditters), the paternal grandparents of the two minor children involved in this case, sought to "intervene" in a juvenile proceeding then pending in the county court of Platte County, Nebraska, sitting as a juvenile court. The county court held that the Ditters had no standing and dismissed their petition. On appeal, the District Court reversed the order of the juvenile court and an appeal was taken to this court.

Prior to the appeal to this court the parental rights of the sole surviving parent were terminated pursuant to an adjudication of dependency under former Neb. Rev. Stat. § 43-202(2)(b) (Reissue 1978). On appeal, we affirmed. See *In re Interest of Ditter, ante* p. 279, 322 N.W.2d 642 (1982). The facts involving the termination are set out in detail in *In re Interest of Ditter,* and we need not repeat them here except to note that the natural mother is deceased, having been killed by the natural father who is now serving a sentence of life imprisonment for murder.

While we are unable to find any decision in this jurisdiction having previously addressed the issue presented here and are unable to find any state statute directly applicable, we believe that the general scheme regarding termination compels us to hold

that once the natural parent's rights to a child have been terminated pursuant to the provisions of Neb. Rev. Stat. § 43-292 (Cum. Supp. 1982), formerly § 43-209 (Reissue 1978), the parents of the parent whose rights have been terminated likewise lose any legal right to visitation which might otherwise exist. To hold otherwise would seem to defeat the purpose of terminating parental rights.

Under the provisions of Neb. Rev. Stat. § 43-293 (Cum. Supp. 1982) "An order terminating the parent-juvenile relationship shall divest the parent and juvenile of all legal rights, privileges, duties, and obligations with respect to each other and the parents shall have no rights of inheritance with respect to such juvenile." It appears to us that if we are principally concerned with the best interests of the child (see, *In re Interest of J.L.L.,* 209 Neb. 76, 306 N.W.2d 175 (1981); *State v. A.H.,* 198 Neb. 444, 253 N.W.2d 283 (1977)), and by terminating parental rights we intend to divest any tie between the parent and child so that we may, as quickly as possible, find an adoptive family for the child and permit the child to begin anew, then little purpose would be served in continuing family ties between the grandparents and the child to be adopted. While that view is not unanimous throughout the country, it is the generally accepted view. See, *Matter of Adoption of Gardiner,* 287 N.W.2d 555 (Iowa 1980); *Poe v. Case,* 263 Ark. 488, 565 S.W.2d 612 (1978); *Lee v. Kepler,* 197 So. 2d 570 (Fla. Dist. Ct. App. 1967); *Browning v. Tarwater,* 215 Kan. 501, 524 P.2d 1135 (1974); *Smith v. Trosclair,* 321 So. 2d 514 (La. 1975); *Bikos v. Nobliski,* 88 Mich. App. 157, 276 N.W.2d 541 (1979); *People v. Rado,* 54 Misc. 2d 843, 283 N.Y.S.2d 483 (1967); *Acker v. Barnes,* 33 N.C. App. 750, 236 S.E.2d 715 (1977), *cert. denied* 293 N.C. 360, 238 S.E.2d 149; *Matter of Fox,* 567 P.2d 985 (Okla. 1977); *Deweese v. Crawford,* 520 S.W.2d 522 (Tex. Civ. App. 1975).

In 2 Am. Jur. 2d *Adoption* § 85 at 928-29 (1962), the

author notes: "The purpose and effect of most statutes are to terminate all legal relations between a minor child and its natural parents or formal legal guardian, and to give the adopting parent full rights of custody of the infant, to the exclusion of the child's own parents and all other persons, until some lawful reason for change in the child's custody is made to appear by competent evidence. Public policy demands that an adoption carry with it complete breaking of old ties. Under the new relation thus created, the adoptive parents are as much entitled to the custody of their adopted child as natural parents are to their natural children. The rights of adoptive parents are of the same nature and scope as those of a natural parent, subject to the same restrictions as that of natural parents.

"While the question of the propriety of a provision in an adoption decree, giving the natural parent the right to visit the child or preserving other rights of the natural parent, may be answered by special provisions of the statutes governing adoption procedure, where the adoption statute gives the adopted child the status of a natural child and frees the natural parents of legal obligations toward it, a court in granting an adoption decree is without authority to include in the adoption decree a grant of visitation privileges to the parent or members of the parents' family."

While it is true in the instant case that only termination has occurred and adoption has not yet taken place, we nevertheless believe that if there is good reason to sever the relationship between the natural parent and the child at the earliest possible moment so that the child may become accustomed to a new family, no purpose exists, in promoting the best interests of the child, to delay that severing act during the period after termination and before adoption. Even if one were to reject the common-law view that no right of visitation ever existed in the grand-

parent at any time and accept the more modern view that under proper facts, where the best interests of the child demand it, grandparents may be entitled to seek rights of visitation, we would reach the same result in a case such as this. We believe that even under the "best interests of the child" theory we must conclude as a matter of law that the best interests of a child require us to find that where a natural parent's rights to a child have been terminated, the grandparents should not have a legal right to seek visitation. To hold otherwise would only make the adoption and subsequent adjustment more difficult.

In the case of *In re Johnson*, 210 Kan. 828, 834, 504 P.2d 217, 223 (1972), the Kansas court, in reviewing a case similar to the case at bar, said: "In this regard the instant case presents a situation quite different from a simple custody suit. The disposition of the children here is for adoptive purposes and has the effect of prohibiting appellant from exercising visitation rights as the children, when adopted, will have new parents and new grandparents." The Kansas court therefore held that the grandparents could not visit the children following termination and before adoption. We therefore believe the better rule to be, and now declare, that once parental rights of a child have been terminated as to a natural parent, the natural parents of such parent whose rights have been terminated are not entitled to continue visitation as a matter of right. We should note that our holding is limited to the situation described herein. Had termination not occurred, we would be confronted with a different question which we do not now decide. Having thus concluded, we believe that the grandparents in this case had no standing to maintain this action to seek visitation, and the decision of the county court finding that the Ditters lacked standing should be reinstated. The judgment of the District Court is there-

fore reversed and the cause remanded with instructions to reinstate the decision of the county court.

REVERSED AND REMANDED WITH DIRECTIONS.

McCOWN, J., concurs in the result.

CLINTON, J., dissenting.

I respectfully disagree with the broad scope of the holding in this case. The rationale of the opinion assumes an adoption of the child. I would agree that where an adoption takes place then the stability of the new family and the best interests of the child would terminate the grandparents' legal interest.

Where an adoption has not taken place and the child is under foster care, the interests of the child may very well be served by granting to grandparents visitation rights. Such interests must be determined on an ad hoc basis. I would grant standing to the grandparents, under the circumstances of this case, to intervene in the best interests of the child.